[No. A026492. First Dist., Div. Three. Apr. 4, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
CARMEN JOSEPH ARTHURLEE, Defendant and Appellant.

## COUNSEL

James P. Buyoucos, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Edward P. O'Brien, Assistant Attorney General, Ronald E. Niver and Clifford K. Thompson, Jr., Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**WHITE, P. J.**—Defendant and appellant Carmen Joseph Arthurlee, also know as Joe Gunn, appeals from the judgment of the Superior Court of San Francisco County, entered after a jury found him guilty of two counts of selling the controlled substance cocaine (Health & Saf. Code, § 11352), and found him not guilty of possession of cocaine (Health & Saf. Code, § 11351) and not guilty of possession of marijuana (Health & Saf. Code, § 11357, subd. (b).)

Appellant contends on appeal that (1) the instructions given to the jury on entrapment were erroneous; and (2) the giving of the erroneous instructions was prejudicial error requiring reversal.

We find that the instructions given were consistent with the entrapment standard set forth by the California Supreme Court in *People* v. *Barraza* (1979) 23 Cal.3d 675 [153 Cal.Rptr. 459, 591 P.2d 947], and therefore affirm the judgment.

### FACTS

In July 1983, San Francisco Police Officer Judy Twine conducted an undercover narcotics investigation at "Big Time Joe Gunn's Hand Car Wash" in San Francisco. Appellant was the proprietor of the car wash.

Twine first went to the car wash on Wednesday, July 13, 1983. She told an employee, named "T," that she wanted to buy marijuana and cocaine. "T" replied that if she returned on Friday, his boss would be there and would probably have some drugs. When Twine returned on Friday, July 15, 1983, "T" advised her that his boss was out of town and would not return until Monday.

Officer Twine returned to the car wash on Monday, July 18, 1983. She asked for "T," but was told by appellant that he had been fired. Appellant

then asked Twine if she wanted to buy a half-gram of cocaine. Twine paid $60 to appellant for a bindle containing .34 grams of cocaine.

On July 21, 1983, Twine returned to the car wash, under the surveillance of San Francisco Police Officers Robinson, McPheters and La Prevotte. Robinson had obtained a search warrant for the premises on the preceding day. Twine asked appellant "if he could fix [her] up again." After Twine followed him into his "office," appellant reached into a jacket pocket and withdrew a plastic bag containing several bindles. Twine then paid $60 for one bindle which contained .37 grams of cocaine.

Appellant's evidence concerning the two cocaine sales differed somewhat from that of the prosecution. Appellant testified that Officer Twine acted in a seductive manner. Appellant testified that Officer Twine played with his ears and looked into his mouth. Appellant testified that she told him how good he looked and acted generally as if she was physically attracted to him and wanted to "go out" with him.

Officer Twine stated that her relationship with the defendant was "strictly financial." Twine denied wearing her blouse open. She also denied telling appellant she would go out with him, or that she would bring a girlfriend.

The remaining facts are not relevant to this appeal, as appellant was found not guilty on the charges of possession of cocaine and marijuana.

At trial, appellant did not challenge the state's assertion that he was involved in the two cocaine sales to Officer Twine. Rather, he argued that he was entrapped. In instructing the jury on the entrapment defense, the court used CALJIC Nos. 4.60, 4.61 and 4.61.5, which were requested by appellant and the People.[1]

---

[1]CALJIC No. 4.60 (1979 3d rev.): "It is a defense to the commission of an act, otherwise criminal, that such act was induced by the conduct of law enforcement agents or officers [or persons acting under their direction, suggestion or control] when the conduct was such as would likely induce a normally law-abiding person to commit the crime.

"To establish this defense the defendant has the burden of proving by a preponderance of the evidence that the conduct of the law enforcement agents or officers [or persons acting under their direction, suggestion or control] was such as would likely induce a normally law-abiding person to commit the crime.

"Preponderance of the evidence means such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth.

"If you find by a preponderance of the evidence that this defense has been established, the defendant is entitled to a verdict of acquittal."

CALJIC No. 4.61 (1981 rev.): "In determining whether this defense has been established, guidance will generally be found in the application of one or both of two principles. First, if the actions of the law enforcement agent would generate in a normally law-abiding person a motive for the crime other than ordinary criminal intent, entrapment will be established. An example of such conduct would be an appeal by the police that would induce such a

■ In *People* v. *Barraza, supra,* 23 Cal.3d 675, the California Supreme Court set forth the guiding principles of entrapment in this state: ". . . [T]he proper test of entrapment in California is the following: was the conduct of the law enforcement agent likely to induce a *normally law-abiding person* to commit the offense? For the purposes of this test, we presume that such a person would normally resist the temptation to commit a crime presented by the simple opportunity to act unlawfully. Official conduct that does no more than offer that opportunity to the suspect—for example, a decoy program—is therefore permissible; but it is impermissible for the police or their agents to pressure the suspect by overbearing conduct such as badgering, cajoling, importuning, or other affirmative acts likely to induce a *normally law-abiding person* to commit the crime. ■ [¶] Although the determination of what police conduct is impermissible must to some extent proceed on an ad hoc basis, guidance will generally be found in the application of one or both of two principles. First, if the actions of the law enforcement agent would generate in a *normally law-abiding person* a motive for the crime other than ordinary criminal intent, entrapment will be established. An example of such conduct would be an appeal by the police that would induce such a person to commit the act because of friendship or sympathy, instead of a desire for personal gain or other typical criminal purpose. Second, affirmative police conduct that would make commission of the crime unusually attractive to a *normally law-abiding person* will likewise constitute entrapment. Such conduct would include, for example, a guarantee that the act is not illegal or the offense will go undetected, an offer of exorbitant consideration, or any similar enticement. [¶] ■ Finally, while the in-

---

person to commit the act because of friendship or sympathy, instead of a desire for personal gain or other typical criminal purpose. Second, affirmative police conduct that would make commission of the crime unusually attractive to a normally law-abiding person will likewise constitute entrapment. Such conduct would include, for example, a guarantee that the act is not illegal or the offense will go undetected, an offer of exorbitant consideration, or any similar enticement.

"Finally, while the inquiry must focus primarily on the conduct of the law enforcement agent, that conduct is not to be viewed in a vacuum; it should also be judged by the effect it would have on a normally law-abiding person situated in the circumstances of the case at hand. Among the circumstances that may be relevant for this purpose, for example, are the transactions preceding the offense, the suspect's response to the inducements of the officer, the gravity of the crime, and the difficulty of detecting instances of its commission.

"[Such matters as the character of the defendant, his predisposition to commit the offense, and his subjective intent are not relevant to the determination of the question of whether entrapment occurred.]"

CALJIC No. 4.61.5 (1979 rev.): "It is permissible for law enforcement agents or officers [or persons acting under their direction, suggestion or control] to provide opportunity for the commission of a crime including reasonable, though restrained, steps to gain the confidence of suspects but it is not permissible for law enforcement agents or officers [or persons acting under their direction, suggestion or control] to induce the commission of a crime by overbearing conduct such as badgering, coaxing or cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime."

quiry must focus primarily on the conduct of the law enforcement agent, that conduct is not viewed in a vacuum; it should also be judged by the effect it would have on a *normally law-abiding person* situated in the circumstances of the case at hand. Among the circumstances that may be relevant for this purpose, for example, are the transactions preceding the offense, the suspect's response to the inducements of the officer, the gravity of the crime, and the difficulty of detecting instances of its commission. [Citation.] We reiterate, however, that under this test such matters as the character of the suspect, his predisposition to commit the offense, and his subjective intent are irrelevant." (*Id.,* 23 Cal.3d at pp. 689-691, fns. omitted, italics added; see *People* v. *Kelley* (1984) 158 Cal.App.3d 1085, 1094-1095 [205 Cal.Rptr. 283], hg. den. Oct. 4, 1984.)

The *Barraza* principles are incorporated in the standard jury instructions on entrapment, which the trial court gave in this case. (*People* v. *Kelley, supra,* 158 Cal.App.3d at p. 1096.) ■ Appellant argues on appeal, however, that under the authority and reasoning of *People* v. *Martinez* (1984) 157 Cal.App.3d 660 [203 Cal.Rptr. 833], the CALJIC instructions given to the jury in the instant case were erroneous.

In *Martinez,* the court found that these same CALJIC instructions on entrapment did not accurately reflect the *Barraza* holding upon which they are based. (*People* v. *Martinez, supra,* 157 Cal.App.3d at p. 667.) The court reasoned that the "normally law-abiding person" entrapment standard, as set out in the CALJIC instructions, unfairly focuses the jurors' attention on the subjective character, predisposition and intent of the actor (defendant) and away from the objective nature and extent of the police conduct in issue. Thus, the goal of *Barraza,* to use an "objective" standard in determining whether entrapment occurred, would be better effectuated by jury instructions that do not use the phrase "normally law-abiding person" for the standard. (*Id.,* at pp. 665-669.) Therefore, the court held in *Martinez* that because the court used CALJIC Nos. 4.60, 4.61 and 4.61.5, the jury was not fairly instructed on the defense of entrapment. (*Id.,* at pp. 669-670.)

We do not follow the *Martinez* rationale and holding in the instant case. We find that the use of the phrase "normally law-abiding person" in the CALJIC instructions given to the jury was correct under *Barraza.* "The instruction[s] [make] clear that the test of entrapment is an objective not subjective one. . . ." (*People* v. *Kelley, supra,* 158 Cal.App.3d at p. 1096.)

We follow the cases subsequent to *Barraza,* which have also adhered to the "normally law-abiding" language of the decision. (*Kelley, supra,* at p. 1096; see *People* v. *McIntire* (1979) 23 Cal.3d 742, 745 [153 Cal.Rptr.

237, 591 P.2d 527]; *People* v. *Bottger* (1983) 142 Cal.App.3d 974, 984 [191 Cal.Rptr. 408]; *Douglass* v. *Board of Medical Quality Assurance* (1983) 141 Cal.App.3d 645, 655 [190 Cal.Rptr. 506]; *People* v. *Allison* (1981) 120 Cal.App.3d 264, 272 [174 Cal.Rptr. 481].)

We therefore find that the jury instructions were not erroneous and that the jury was fairly instructed under *Barraza*. Thus, no reversible error occurred in this case.

We note further, however, that after the passage of Proposition 8, it is an open question whether the California standard should still be applied in entrapment cases, rather than the less strict federal standard. The federal entrapment standard is set out in *United States* v. *Russell* (1973) 411 U.S. 423 [36 L.Ed.2d 366, 93 S.Ct. 1637]. Unlike the California objective test, the federal test for the entrapment defense " 'focus[es] on the [subjective] intent or predisposition of the defendant to commit the crime,' [citation] rather than upon the conduct of the Government's agents." (*Hampton* v. *United States* (1976) 425 U.S. 484, 488 [48 L.Ed.2d 113, 118, 96 S.Ct. 1646].)

We do not answer the question in this opinion, as to whether the California rule for entrapment still applies, because the result in this case would also be the same under the federal rule.

The judgment is affirmed.

Barry-Deal, J., and Merrill, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 20, 1985.