[No. G000659. Fourth Dist., Div. Three. Oct. 18, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES ROBERT SLATTON, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976(b), parts I, III and IV are not published, as they do not meet the standards for publication.

**COUNSEL**

Bruce M. Margolin and Joseph P. Farnan for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Jay M. Bloom, Michael D. Wellington and Keith I. Motley, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SONENSHINE, Acting P. J.**—Appellant James Robert Slatton was convicted of two counts of sale of cocaine (Health & Saf. Code, § 11352) in separate jury trials. He raises three issues: (1) prosecutorial suppression of material evidence; (2) prosecutorial misconduct and instructional error concerning his defense of entrapment and; (3) sentencing error, particularly in the denial of probation. We affirm.

In February 1981, informant Jeff Lourien contacted sheriff's deputy Robert Russell and implicated Slatton in cocaine trafficking. On February 19, Russell, Lourien and Slatton met at a restaurant and discussed the price for a quantity of cocaine, but no sale was consummated.

On March 9, the three met again at the restaurant and Slatton sold Russell a one-eighth ounce sample of cocaine for $300. At a meeting the next day, Slatton agreed to sell Russell a pound of cocaine at a certain motel that

evening. Russell rented a room there, but the sale did not occur. After another aborted attempt on March 11, Slatton and Russell arranged to meet at the motel on March 17. Slatton and a confederate arrived with a brown bag containing two plastic baggies of white powder. After Russell tested the powder and determined it was cocaine, Slatton was placed under arrest.

Slatton and Russell had talked on the telephone several times to arrange the sale. During argument in Slatton's first trial the prosecution discovered these conversations had been recorded. A prosecution motion to reopen and introduce the tapes was denied.

The jury returned a verdict of guilty on count I, concerning the one-eighth ounce sample Slatton sold on March 9.[2] It was unable to reach a verdict on the March 17 half-pound sale and a mistrial was declared on that count.

At the retrial on count II, the prosecution was permitted to introduce the tape recordings into evidence. Slatton's defense was entrapment. The jury found him guilty.

I*

. . . . . . . . . . . . . . . . . . . . . .

II

█ Slatton argues the instructions on entrapment were erroneous. Again, we disagree.

CALJIC instructions, Nos. 4.60, 4.61 and 4.61.5, were given.[5] They were created after the Supreme Court's landmark case on entrapment, *Peo-*

---

[2]For the first time at oral argument, Slatton mounts a vague attack on the conviction for this count. In essence, he incorporates the arguments he has consistently made concerning count II. In light of our disposition of these issues, we need not further address the propriety of this belated challenge to count I.

*See footnote 1, *ante,* page 487.

[5]CALJIC No. 4.60 states: "It is a defense to the commission of an act, otherwise criminal, that such act was induced by the conduct of law enforcement agents or officers [or persons acting under their direction, suggestion or control] when the conduct was such as would likely induce a normally law-abiding person to commit the crime. [¶] To establish this defense the defendant has the burden of proving by a preponderance of the evidence that the conduct of the law enforcement agents or officers [or persons acting under their direction, suggestion or control] was such as would likely induce a normally law-abiding person to commit the crime. [¶] Preponderance of the evidence means such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth. [¶] If you find by a preponderance of the evidence that this defense has been established, the

*ple* v. *Barraza* (1979) 23 Cal.3d 675 [153 Cal.Rptr. 459, 591 P.2d 947]. Nevertheless, Slatton contends these instructions are contrary to *Barraza* because they instruct the jury to use a *subjective* rather than *objective* standard in evaluating the police conduct vis-à-vis the defendant.

*People* v. *Barraza, supra,* 23 Cal.3d 675 establishes the following standard for evaluating the defense of entrapment: "[W]as the conduct of the law enforcement agent likely to induce a normally law-abiding person to commit the offense?" (*Id.,* at pp. 689-690.) This is followed by an explanation of the operative principles the *Barraza* court found most important in answering this question. (*Id.,* at pp. 690-691.) This discussion culminates with the point the factual context of the offense should be considered in determining entrapment. (*Ibid.*) Labelling this an "objective" standard can be deceptive; our Supreme Court took great pains to thoroughly examine this defense. Beyond saying the defense of entrapment after *Barraza* focuses on the police conduct rather than the defendant's character, generalities can be misleading. The CALJIC instructions adopt the Supreme Court's language.

Nevertheless, whether the instructions are true to the principles of *Barraza* is the subject of conflicting Court of Appeal opinions. *People* v. *Arthurlee* (1985) 168 Cal.App.3d 246 [214 Cal.Rptr. 5] and *People* v. *Kelley*

---

defendant is entitled to a verdict of acquittal."

CALJIC No. 4.61 states: "In determining whether this defense has been established, guidance will generally be found in the application of one or both of two principles. First, if the actions of the law enforcement agent would generate in a normally law-abiding person a motive for the crime other than ordinary criminal intent, entrapment will be established. An example of such conduct would be an appeal by the police that would induce such a person to commit the act because of friendship or sympathy, instead of a desire for personal gain or other typical criminal purpose. Second, affirmative police conduct that would make commission of the crime unusually attractive to a normally law-abiding person will likewise constitute entrapment. Such conduct would include, for example, a guarantee that the act is not illegal or the offense will go undetected, an offer of exorbitant consideration, or any similar enticement. [¶] Finally, while the inquiry must focus primarily on the conduct of the law enforcement agent, that conduct is not to be viewed in a vacuum; it should also be judged by the effect it would have on a normally law-abiding person situated in the circumstances of the case at hand. Among the circumstances that may be relevant for this purpose, for example, are the transactions preceding the offense, the suspect's response to the inducements of the officer, the gravity of the crime, and the difficulty of detecting instances of its commission. [¶] [Such matters as the character of the defendant, his predisposition to commit the offense, and his subjective intent are not relevant to the determination of the question of whether entrapment occurred.]"

CALJIC No. 4.61.5 states: "It is permissible for law enforcement agents or officers [or persons acting under their direction, suggestion or control] to provide opportunity for the commission of a crime including reasonable, though restrained, steps to gain the confidence of suspects but it is not permissible for law enforcement agents or officers [or persons acting under their direction, suggestion or control] to induce the commission of a crime by overbearing conduct such as badgering, coaxing or cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime."

(1984) 158 Cal.App.3d 1085 [205 Cal.Rptr. 283] endorse the CALJIC instructions while in *People* v. *Martinez* (1984) 157 Cal.App.3d 660 [203 Cal.Rptr. 833], the court held the instructions erroneously focus on the nature of the defendant rather than the nature of the police activity. Slatton relies on *Martinez,* but we agree with *Arthurlee* and *Kelley*—the CALJIC instructions on entrapment do not distort the applicable principles enunciated in *Barraza.*

The following passage from *Arthurlee* encapsules our view as well: "The *Barraza* principles are incorporated in the standard jury instructions on entrapment, which the trial court gave in this case. [Citation.] Appellant argues on appeal, however, that under the authority and reasoning of *People* v. *Martinez* (1984) 157 Cal.App.3d 660 [203 Cal.Rptr. 833], the CALJIC instructions given to the jury in the instant case were erroneous. [¶] In *Martinez,* the court found that these same CALJIC instructions on entrapment did not accurately reflect the *Barraza* holding upon which they are based. [Citation.] The court reasoned that the 'normally law-abiding person' entrapment standard, as set out in the CALJIC instructions, unfairly focuses the jurors' attention on the subjective character, predisposition and intent of the actor (defendant) and away from the objective nature and extent of the police conduct in issue. Thus, the goal of *Barraza,* to use an 'objective' standard in determining whether entrapment occurred, would be better effectuated by jury instructions that do not use the phrase 'normally law-abiding person' for the standard. [Citation.] Therefore, the court held in *Martinez* that because the court used CALJIC Nos. 4.60, 4.61 and 4.61.5, the jury was not fairly instructed on the defense of entrapment. [Citation.] [¶] We do not follow the *Martinez* rationale and holding in the instant case. We find that the use of the phrase 'normally law-abiding person' in the CALJIC instructions given to the jury was correct under *Barraza.* 'The instruction[s] [make] clear that the test of entrapment is an objective not subjective one. . . .' [Citation.] [¶] We follow the cases subsequent to *Barraza* which have also adhered to the 'normally law-abiding' language of the decision. (*Kelley, supra,* at p. 1096; see *People* v. *McIntire* (1979) 23 Cal.3d 742, 745 [153 Cal.Rptr. 237, 591 P.2d 527]; *People* v. *Bottger* (1983) 142 Cal.App.3d 947, 984 [191 Cal.Rptr. 408]; *Douglass* v. *Board of Medical Quality Assurance* (1983) 141 Cal.App.3d 645, 655 [190 Cal.Rptr. 506]; *People* v. *Allison* (1981) 120 Cal.App.3d 264, 272 [174 Cal.Rptr. 481].) [¶] We therefore find that the jury instructions were not erroneous and that the jury was fairly instructed under *Barraza.* Thus, no reversible error occurred in this case." (*People* v. *Arthurlee, supra,* 168 Cal.App.3d 246, 251-252.)

We perceive an additional difficulty with the *Martinez* opinion and echo our earlier observations about the *Barraza* standard. The *Martinez* majority

seemed perplexed because the Supreme Court adopted an "objective" standard which nonetheless encompasses "subjective" considerations. (*People v. Martinez, supra,* 157 Cal.App.3d 660, 666.) In our view, the Supreme Court adopted a new standard, which it explained at length. Attempting a shorthand description of the standard ("objective" test) may be useful to commentators, but is of very limited utility in passing on the adequacy of instructions purporting to embody it. The CALJIC instructions, by using *Barraza*'s language, appropriately include the standard's complexity. We cannot fault these instructions for loyally imparting the complexities of the current entrapment standard to the jury.

III*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

The judgment is affirmed.

Crosby, J., and Wallin, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 29, 1986.

---

*See footnote 1, *ante,* page 487.