[Crim. No. 11523. First Dist., Div. One. Dec. 31, 1973.]

THE PEOPLE, Plaintiff and Appellant, v.
ROBERT J. ADAMI, Defendant and Respondent.

## COUNSEL

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., and Jack R. Winkler, Chief Assistant Attorneys General, William E. James and Edward P. O'Brien, Assistant Attorneys General, Derald E. Granberg and Clifford K. Thompson, Jr., Deputy Attorneys General, for Plaintiff and Appellant.

Charles M. Dresow for Defendant and Respondent.

## OPINION

**MOLINARI, P. J.**—The People appeal from the decision granting defendant's motion pursuant to Penal Code section 995 as to count two of the indictment charging defendant with attempted murder (Pen. Code, §§ 187, 664).[1]

In count one of the indictment defendant was charged with soliciting the crime of murder in violation of Penal Code section 653f. Each of the two counts charged in the indictment are based upon the alleged efforts of defendant to have his wife murdered.

The evidence presented to the grand jury was substantially as follows: Defendant was under investigation for sales of narcotics. Agent Thomas Dell'Ergo, who was conducting the undercover investigation, made several purchases of cocaine from defendant. During the course of their dealings, defendant mentioned to Dell'Ergo that he was having marital problems with his wife, and he was interested in getting rid of her. He expressed concern that his wife would inform the local authorities of his drug dealings. This conversation took place on November 1, 1972, over the telephone. Later that day Dell'Ergo met with defendant to negotiate the purchase of cocaine, and once again defendant mentioned that he wanted to get rid of his wife. He suggested arranging a fatal automobile accident.

On the following day Dell'Ergo telephoned defendant regarding the purchase of cocaine, and defendant said he really wanted to have something done about his wife because she had stolen $5,000 in cash from him. Defendant said that he was interested in having Dell'Ergo be the one to do something about it.

On the evening of November 6, 1972, Dell'Ergo contacted defendant and advised him that he had been in touch with an individual who would be willing to kill defendant's wife for a price. Dell'Ergo advised defendant that a $500 deposit was required, and it would be necessary for defendant to furnish a photograph of his wife. Defendant agreed, and Dell'Ergo advised him that he would set up a meeting for the following day.

Dell'Ergo met with defendant at a restaurant parking lot on November 7, 1972, in the afternoon, and drove him to the Laurel Motor Inn, where Inspector King of the San Francisco Police Department was waiting in a room. Dell'Ergo introduced King to defendant as the would-be assassin. Defendant gave King $500 and furnished him with a photograph of his wife. Defendant then wrote her description out in detail and told King of her possible whereabouts.

---

[1]This appeal is permitted pursuant to Penal Code section 1238, subdivision (a)(1).

King testified that defendant told him that he wanted to get rid of his wife, that there was some talk about an insurance policy with a double indemnity clause that defendant had on his wife, and that they discussed the most profitable way of killing her. King then asked defendant to write out his wife's name, her physical description, where she was living (defendant and his wife were separated), the description of any cars she might be driving, and anything else that might come to defendant's mind. Defendant wrote this information on Laurel Motor Inn stationery. King told defendant the price would be $2,000 and that he wanted $500 as a downpayment with the balance to be paid upon completion of the agreement. King then asked defendant if he was going to change his mind. Defendant replied that he was not going to change his mind and when King asked him if he was sure he wanted his wife dead, defendant replied "yes." Defendant then left.

It is not disputed that the evidence before the grand jury sufficed to establish probable cause to believe that defendant solicited another to commit murder as charged in count one. The question is whether the solicitation itself was sufficient to establish probable cause to believe that defendant attempted the murder as charged in count two.

■ The elements of attempted murder are the intent to murder a human being and a direct but ineffectual act in furtherance of such intent, such act being more than mere preparation. (*People* v. *Buffum,* 40 Cal.2d 709, 718 [256 P.2d 317]; *People* v. *Miller,* 2 Cal.2d 527, 530 [42 Cal.Rptr. 308, 98 A.L.R. 913]; *People* v. *Anderson,* 1 Cal.2d 687, 689-690 [37 P.2d 67]; *People* v. *Grant,* 105 Cal.App.2d 347, 356-357 [233 P.2d 660]; see *People* v. *Staples,* 6 Cal.App.3d 61, 64 [85 Cal.Rptr. 589].) To constitute an attempt preparation alone is not enough but some appreciable fragment of the crime must have been accomplished, i.e., it must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter. (*People* v. *Gallardo,* 41 Cal.2d 57, 66 [257 P.2d 29]; *People* v. *Buffum, supra; People* v. *Miller, supra,* at pp. 530-532.) Accordingly, in order to constitute an attempt it must not only appear that the defendant had a specific intent to commit a crime but also that he did a direct unequivocal act toward that end. (*People* v. *Gallardo, supra; People* v. *Buffum, supra,* at p. 716.)

No California case has been cited, nor has our research discovered any, whose facts closely approximate the case before us. The People place strong reliance on *State* v. *Mandel,* 78 Ariz. 226 [278 P.2d 413], the facts of which, they assert, are similar to those of the instant case. In that case a woman attempted to hire someone to kill her husband. She took him in the car to show him her husband's home and car and an arroyo where the

killer could dispose of the body. The acts prior to the murder consisted of several meetings with the hired killer, and included a meeting on Sunday, the day the crime was to be committed. The killer was given a downpayment. The court found these facts sufficient to uphold a conviction of attempted murder, upon the rationale that the defendant's acts constituted more than mere solicitation or preparation. (78 Ariz. at p. 229.)

Cases in other jurisdictions have held, under similar circumstances, that the defendant's conduct constituted mere preparation. Thus, in *State* v. *Davis*, 319 Mo. 1222 [6 S.W.2d 609], it was held that where the defendant was charged with attempted murder under an attempt statute similar to the California statute (Pen. Code, § 664) such a crime was not committed under the following facts: The defendant and the wife of the proposed victim planned to kill the husband and collect the life insurance and live together. They arranged to have someone obtain the services of an ex-convict to murder the husband. A police officer posed as the ex-convict. They had several meetings, the defendant outlined the plan, and agreed to pay the supposed ex-convict the sum of $600. The defendant made and gave the "ex-convict" a map or drawing showing where the husband could be found as well as two photographs of him; he paid the "ex-convict" the sum of $600 and arranged it so that the murder would appear to have been incident to a robbery. The wife and husband were dressed and ready to go to the appointed place when the police entered the home.

In *Davis* the reviewing court found that the agent employed to murder the husband did no act directly or indirectly moving toward the consummation of the intended crime and that the acts committed by the defendant amounted to no more than solicitation and preparation. (319 Mo. at pp. 1227-1228 [6 S.W.2d at pp. 611-612].)

A case reaching the same result as *Davis* is *Hicks* v. *Commonwealth*, 86 Va. 223 [9 S.E. 1024]. There the defendant solicited one Laura Long, upon a promise of reward to administer strychnine to a person the defendant intended to kill. The defendant purchased the strychnine and gave it to Ms. Long with instructions that she place it in the victim's coffee. Ms. Long did nothing with respect to the request. The reviewing court, in finding that there was no attempt to commit the crime of murder, stated: " 'Merely soliciting one to do an act,' . . . 'is not an attempt to do that act. . . . In a high, moral sense, it may be true that solicitation is attempt; but in a legal sense, it is not.' [Citation.] . . . [¶] Here, undoubtedly, there was an intent to commit murder; but the acts done do not amount to anything more than the mere arrangement of the proposed measures for its commission. . . ." (86 Va. at p. 229 [9 S.E. at p. 1026].)

In *Stabler* v. *Commonwealth,* 95 Pa.St. 318, the defendant offered a reward, gave directions to another person on how to commit the crime, and furnished him with the poison. The person solicited testified he never had any intention of administering the poison and never did anything towards it. It was there held that there was no attempt to commit the crime upon the rationale that to consummate a crime something more than mere solicitation of another to commit it is necessary. (95 Pa.St. at pp. 321-322.)

The weight of authority is that solicitation alone is not an attempt, and if solicitation is punishable it must be so charged in the indictment rather than as an attempt. (See Perkins, *Criminal Attempt and Related Problems* (1955) 2 U.C.L.A. L.Rev. 319, 351-353; and see *State* v. *Lowrie,* 237 Minn. 240, 243 [54 N.W.2d 265, 266] [attempted bribery]; *State* v. *Lampe,* 131 Minn. 65, 69-70 [154 N.W. 737, 739] [attempted extortion].) It is suggested by Perkins that if the solicitation is to be a criminal attempt it is essential that the solicitor intend to take an active part in the crime. (At p. 353.)

We observe that in *Gallardo* the California Supreme Court, in holding that certain actions taken by the defendants did not constitute an attempt to commit an abortion, relied on *Davis, Lowrie* and *Lampe.* (41 Cal.2d at p. 66.) The court in *Gallardo* concluded that the conduct of the defendants in arranging for operations, filling out hospital cards, and accepting money, did not amount to an attempt. (41 Cal.2d at p. 66.)

■ We are persuaded that the principle articulated in *Davis, Hicks, Stabler, Lowrie* and *Lampe* is the applicable rule to be applied to the facts of the instant case and is the rule recognized and adopted in California by the *Gallardo* and *Buffum* decisions. In the present case no appreciable fragment of the crime charged was accomplished. Although there is present the element that defendant had the specific intent to commit murder, there is no evidence that he committed a direct unequivocal act to that end. There is no evidence that defendant started to provide, supply, administer or employ any instrument or other means to procure the death of his wife. The acts on defendant's part consisted solely of solicitation or mere preparation. With particular respect to Inspector King, we observe that all that was done by him was to agree with defendant that he would commit the crime but that his agreement was simulated and made without any intent of performing it; nor did he perform any act toward the commission of the crime intended by defendant.

We do not agree with the rationale of *Mandel* because we do not perceive that under the facts of that case any appreciable fragment of the crime charged was accomplished. The acts done did not amount to any more

than the mere arrangement of the proposed measures for its accomplishment. The thrust of *Mandel* is that had it not been for the subterfuge employed by the police the intended victim would have been murdered. In our opinion this is the very circumstance that caused the defendant's conduct to remain within the sphere of solicitation and preparation because there was no direct movement towards the commission of the offense. The "agent" had no intent to commit the offense and he did nothing towards the accomplishment of the desired result other than to enter into an agreement to commit the murder, an agreement the "agent" had no intent of performing. As for the defendant, she committed no direct act or movement in execution of the design. Her acts never went beyond mere preparation because they only went so far as to leave the intended assailant only in the condition to commence the first direct act toward consummation of the defendant's design. In sum, the contemplated murder would not have resulted in the usual course of natural events since neither the "agent" nor the solicitor did any unequivocal overt act which can be said to be a commencement of the commission of the intended crime. (See *People* v. *Miller, supra,* 2 Cal.2d 527, 530-532.)

The cases of *Stokes* v. *State,* 92 Miss. 415 [46 So. 627], and *People* v. *Lanzit,* 70 Cal.App. 498 [233 P. 816], relied upon by the People, are distinguishable. In *Stokes,* the defendant bought a gun, loaded it, proceeded to a location with the hired killer where the murder was to occur, and lay in wait for the victim. The defendant and the hired killer were arrested by the officers who had preceded them. Such conduct was properly held to have gone beyond mere solicitation, preparation or intent and to have constituted an attempt upon the rationale that an act was done tending to effect the commission of the crime and that its commission was prevented by reason of extraneous circumstances. (92 Miss. at pp. 425-427 [46 So. at pp. 628-629].)

In *Lanzit* the defendant was charged with attempt to murder his wife. The police stopped the activity of the defendant and the person whom he had engaged to aid in carrying out the plot just as they were fixing a detonater on a bomb. The bomb would have gone off had not the police intervened, although the person engaged to assist the defendant had informed the police and had no intention of carrying out the plot. In holding that the jury was warranted in finding the defendant guilty of an attempt to commit murder the reviewing court held that the overt acts had reached far enough toward the accomplishment of the intended offense to amount to the commencement of its consummation, i.e., that the actual transaction had

commenced to the extent that it would have resulted in a crime if not interrupted. (70 Cal.App. at pp. 505-509.)

The order setting aside count two of the indictment is affirmed.

Sims, J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 27, 1974. Mosk, J., was of the opinion that the petition should be granted.