[No. D030163. Fourth Dist., Div. One. May 9, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL T. BONNER, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Under California Rules of Court, rule 976.1, only the FACTS, DISCUSSION part A and the DISPOSITION are certified for publication.

## Counsel

Howard C. Cohen, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Janelle M. Boustany and Robert B. Shaw, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**BENKE, Acting P. J.**—Michael T. Bonner was found guilty of two counts of assault with a firearm, two counts of attempted robbery, burglary, possession of a completed check with the intent to defraud and possession of an altered identification card. As to the assault counts, it was found true Bonner used a firearm within the meaning of Penal Code[2] section 12022.5, subdivision (a)(1). As to the attempted robbery and burglary counts, it was found true he was armed with a firearm within the meaning of section 12022, subdivision (a)(1).

Bonner appeals, arguing there was insufficient evidence to convict him of two counts of attempted robbery, and the trial court erred in failing to instruct concerning the defenses of necessity and duress, in allowing a late amendment of the information, and in failing to properly instruct concerning the crime of possession of an altered identification card and committed errors in sentencing.

### Facts

#### A. *Prosecution Case*

##### 1. *Robbery*

In June 1997, Kenneth Dixner was the manager of the Pickwick Hotel in downtown San Diego and Melissa Terry was his assistant. Each week Dixner, using the same routine, took cash and checks from the hotel to the bank. He would usually be accompanied by Terry. In doing so they took an employee-only elevator to Dixner's car in the garage. Their largest deposits were made on Monday at the beginning of each month.

On Monday, June 2, 1997, at 11:00 a.m., Marcia Garcia, a maid at the hotel, left the garage-level laundry room. When she returned at approximately 11:40 a.m. with Jose Diaz, the executive housekeeper, the laundry

---

[2]All further statutory references are to the Penal Code.

room door was closed. When Diaz forced the door open, he was confronted by a masked man holding a pistol. The man grabbed Garcia and attempted to push her into the laundry room. Diaz ran toward the garage exit ramp. As he pushed the button to raise the garage door, the armed man caught up with him. Diaz grabbed the gun and a struggled ensued. The gun fell to the floor and the man ran from the building.

Dixner heard the sounds of a struggle and ran into the garage. Diaz told him he had been attacked. Dixner heard someone say "There he is" and ran after the man. Dixner saw a police officer and told him about the incident. Although the officer saw a man running up the street, he was unable to apprehend him.

Appellant, a former employee of the hotel, had told his brother he was planning on robbing Pickwick because he needed money and because he had been threatened by Julian Campbell. Appellant told him he knew the routine used at the hotel for making deposits, including that the deposits were made by two people. Appellant stated he would rob them in the hotel garage on a Monday.

On June 2, 1997, appellant told his brother he had robbed Pickwick. Later he told him things had gone wrong when persons other than the managers had come into the garage.

### 2. *Possession of Check and Altered Identification*

On June 10, 1997, appellant took a purse belonging to Diana Delgado. In it he found checks which he altered by erasing Delgado's name and putting his name in its place. He also altered his California identification card by removing the number from Delgado's driver's license and affixing it to the card.

### B. *Defense*

Appellant testified he had worked for Julian Campbell. Campbell refused to pay him and appellant took money from Campbell without his permission. Campbell discovered the loss about a week before the attempted robbery and threatened to kill appellant if he did not return the money. Campbell told appellant he could get the money by robbing Pickwick. Appellant was afraid of Campbell because he had seen him harm others who owed him money. On June 2, Campbell, who was armed, dropped appellant off at the hotel and told him: "Either you're going to get that done, or you're going to have the problem I was telling you about."

Appellant went into the hotel planning to commit a robbery. Once in the laundry room, however, he changed his mind and decided not to go through

with the crime. He heard a noise outside the door and hoped it was the manager who would simply walk by. When he heard someone trying to enter the room, he braced the door and tried to take off his mask and dispose of his gun before anyone entered. When the door was shoved open, all appellant wanted to do was leave.

Appellant admitted taking Delgado's purse and altering the checks and identification card.

### C.  *Rebuttal/Surrebuttal*

During a police interrogation appellant related his story of being compelled by Julian Campbell to rob the hotel. When appellant was confronted by information suggesting the claim was untrue, appellant admitted the story was a fabrication.

On surrebuttal appellant stated that during his interrogation he was hoping for leniency and when the officer told him he did not want to hear any more about Campbell, appellant told him that part of his story was untrue.

### DISCUSSION

### A.  *Multiple Counts of Attempted Robbery*

Appellant notes he was convicted of two counts of attempted robbery, one count based on the attempted robbery of the hotel manager and the other on the attempted robbery of the assistant manager. Noting he was never in close proximity to either victim and made no demand on either for money, he argues that a reasonable determination of the number of potential victims cannot reasonably be made and it was unreasonable to convict him of more than one count of attempted robbery.

While appellant offers a series of thought-provoking hypotheticals that may raise difficult questions concerning the application of the law of attempt to crimes involving multiple potential victims, under the facts of this case we conclude he could properly be convicted of two counts of attempted robbery.

### 1.  *Law*

Robbery is the taking of personal property in the possession of another from his person or immediate presence, against his will, accomplished by means of force or fear. (§ 211.) Robbery is both assaultive and larcenous and is a crime against property and persons. (See *People v. Rush* (1993) 16 Cal.App.4th 20, 23 [20 Cal.Rptr.2d 15].)

Property may be in the joint possession of several persons. Thus, while a robbery may involve a single act, a conviction of robbery is proper for each

person in possession of the property against whom force or fear is applied to accomplish the taking. (*People v. Ramos* (1982) 30 Cal.3d 553, 589 [180 Cal.Rptr. 266, 639 P.2d 908]; *People v. Hamilton* (1995) 40 Cal.App.4th 1137, 1142 [47 Cal.Rptr.2d 343].)

■ The crime of attempt occurs when there is a specific intent to commit a crime and a direct but ineffectual act done towards its commission. (§ 21a.) " 'An attempt connotes the intent to accomplish its object, both in law . . . and in ordinary language.' [Citation.]" (*People v. Smith* (1997) 57 Cal.App.4th 1470, 1481 [67 Cal.Rptr.2d 604], fn. omitted.) The act required must be more than mere preparation, it must show that the perpetrator is putting his or her plan into action. That act need not, however, be the last proximate or ultimate step toward commission of the crime. (*People v. Kipp* (1998) 18 Cal.4th 349, 376 [75 Cal.Rptr.2d 716, 956 P.2d 1169].) Where the intent to commit the crime is clearly shown, an act done toward the commission of the crime may be sufficient for an attempt even though that same act would be insufficient if the intent is not as clearly shown. (*People v. Staples* (1970) 6 Cal.App.3d 61, 68 [85 Cal.Rptr. 589].)

2. *Discussion*

■ Appellant does not contest that had he by force or fear taken the hotel receipts from the manager and assistant manager, he could properly be convicted of two counts of robbery. Nor does he reject the conclusion that had he actually confronted the two in the garage but been interrupted before completing the crimes, he could properly be convicted of two counts of attempted robbery. Instead, he argues that in situations where the perpetrator never comes into actual contact with the victims, the perpetrator can be convicted only on a single count of attempted robbery. This is so, he essentially argues, since until the robber acts against particular persons, it is impossible to know how many victims would have been robbed.[3]

While we agree that often, when an attempted robbery is interrupted before the robber is in the presence of the victims, no meaningful way exists to determine their number and only a single count of attempted robbery

---

[3]In a supplemental brief filed after oral argument, appellant contends the evidence was insufficient to convict him of even one count of attempted robbery. We disagree. It was appellant's clear intention to rob Dixner and Terry. He made detailed preparations for the crime, went armed to the scene, placed a mask over his face, waited in hiding moments before his victim's approach, and gave up the enterprise only when discovered by other hotel employees. The evidence was sufficient to convict appellant of attempted robbery. (See *People v. Dillon* (1983) 34 Cal.3d 441, 456 [194 Cal.Rptr. 390, 668 P.2d 697] [evidence of attempted robbery sufficient where there was clear intent to rob and preparation, but no actual entry of intended robbery site]; *People v. Vizcarra* (1980) 110 Cal.App.3d 858, 861-863 [168 Cal.Rptr. 257] [attempted robbery properly found where defendant was near entry of liquor store with rifle under poncho, he hid, and then he departed when customer approached].)

would be proper. At times, however, such a determination can be made. The present case is an example.[4]

Appellant was aware that for security reasons the manager and assistant manager took the hotel receipts to the bank using the manager's car parked in the hotel garage. It was appellant's admitted intent to stop the two at gunpoint and take the money from their possession. Since appellant intended to rob two victims, and since he undertook acts beyond mere preparation directed at robbing the two hotel managers, he could properly be convicted of two counts of attempted robbery.

Appellant acknowledges the evidence of his intent to rob the two but argues it is meaningless since his intentions or the number of victims might have changed before he actually confronted them. Appellant notes the manager might have delivered the receipts alone the day of the crime. He states had this occurred and the crime been thwarted after he confronted the manager, he would be guilty of only a single count of attempted robbery.

We disagree. Appellant was guilty of attempted robbery at the moment his acts in the furtherance of his intent went beyond mere preparation, i.e., when appellant performed acts placing his plan in operation.

It is clear at the moment appellant entered the garage, he intended to rob both the manager and assistant manager. Any later event that interrupted those crimes was irrelevant to appellant's liability for two counts of attempted robbery. The possibility that only one of the intended victims would go to the bank that day is as irrelevant to determining the proper number of counts as the possibility no one would go the bank that day is irrelevant to determining whether an attempt occurred at all.

The evidence clearly showed appellant's intent to rob both the manager and assistant manager. Appellant did not merely prepare to rob the two, he engaged in acts that would ordinarily result in the commission of the crime but for an interruption.[5]

---

[4]A few courts have addressed the question of whether a single act can produce multiple counts of attempt. (*People v. Chinchilla* (1997) 52 Cal.App.4th 683, 687, 690-691 [60 Cal.Rptr.2d 761]; *State v. Sharp* (1995) 283 N.J.Super. 296 [661 A.2d 1297, 1299]; *People v. Mimms* (1976) 40 Ill.App.3d 942 [353 N.E.2d 186]; *People v. Bigsby* (1977) 52 Ill.App.3d 277 [9 Ill.Dec. 924, 367 N.E.2d 358, 363].) Those cases have, however, dealt with acts such as firing a gun at two or more persons or attempting to injure multiple persons with a single act. Thus they involved discrete acts of violence directed towards identifiable victims. While such cases have acknowledged the principle that multiple counts can arise from a single act, the acts in those cases were all directed specifically at identifiable persons.

[5]In his supplemental brief appellant argues making conviction for multiple attempted robberies dependent on the intent to rob multiple victims creates potential corpus delicti problems. This is so, he argues, since such intent is often only revealed by a defendant's

There is some authority in other jurisdictions supporting our position. In *State v. Walters* (1991) 311 Or. 80 [804 P.2d 1164], the Oregon Supreme Court addressed a case where the defendant had attempted to entice a young girl into his van. The defendant in that case had suffered a prior conviction involving nearly identical circumstances in which he had successfully kidnapped, sodomized and raped a young child. In the *Walters* case, the defendant was charged with three counts of attempt arising from the single act. He was convicted of attempted kidnapping, attempted rape and attempted sodomy.

On review following the conviction, the Oregon Supreme Court determined, based upon Walters's prior conviction, that the evidence established he intended to commit three separate felonies on the victim. The court noted that Oregon followed the substantial-step test of the Model Penal Code in determining whether an act has gone beyond mere preparation and thus constituted an effort to commit a crime. The court concluded that since Walters had taken a substantial step in the commission of the offenses and had three separate identifiable objectives when he committed the act, he could reasonably be convicted of three separate crimes of attempt.

Thereafter, on federal habeas corpus, the Ninth Circuit Court of Appeals overturned the convictions on two of the counts. (*Walters v. Maass* (9th Cir. 1995) 45 F.3d 1355.) The federal court appeared to agree with the concept that where a substantial step is taken in the commission of an offense, such act can lead to multiple counts of attempt provided there is sufficient evidence to show separate purposes or intentions accompanying the act. The federal court found there was sufficient evidence to prove an intention to kidnap but found, based upon the record before it, insufficient evidence to prove the intention to rape or to sodomize. It therefore granted habeas corpus as to the latter two attempts.

One can distill from the limited case law that does exist in this area that multiple counts of attempt can arise from a single act which goes beyond

out-of-court statements. (*People v. Jones* (1998) 17 Cal.4th 279, 301-302 [70 Cal.Rptr.2d 793, 949 P.2d 890].)

Assuming the corpus delicti rule requires evidence of an intent to commit multiple robberies on a single occasion independent of a defendant's out-of-court statements, that requirement is no different than for any offense having a specific intent or mental state element.

No corpus delicti issue was raised below. In any event the evidence independent of appellant's statements established a prima facie case that he intended to rob both Dixner and Terry. Appellant was in the hotel garage to commit a robbery. He was in the garage because as a former employee of the hotel he knew Dixner's routine in making bank deposits; part of that routine was that Dixner would be accompanied by Terry. It is reasonable to infer, therefore, appellant expected to confront and rob both of them.

Appellant raises additional issues in his supplemental brief concerning the attempted robbery issue none of which have merit.

mere preparation. Such multiple counts are dependent, however, on demonstration of sufficient evidence to prove beyond a reasonable doubt that the offender had multiple purposes in accompanying the single act.

In the Oregon case, the analysis turned on the application of the substantial step test of attempt as defined in the Model Penal Code in determining that the act went beyond mere preparation. Once such conduct occurs, courts then look to the evidence of the intention of the perpetrator to discern whether there were multiple objectives which would justify convictions on multiple counts of attempt.

In the present case, the record clearly demonstrates knowledge of an intention to rob two people. Bonner's conduct going beyond mere preparation constituted an effort to carry out the objective of the plan; that is, to rob the anticipated victims. Given that the California test for attempt was met, i.e., an act done toward the commission of the crime (*People v. Staples, supra*, 6 Cal.App.3d at p. 68), appellant was properly convicted of two counts of attempted robbery.[6]

B.-E. *

. . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The convictions as to counts 6 and 7 are reversed. In all other respects the judgment is affirmed.

Huffman, J., and Haller, J., concurred.

A petition for a rehearing was denied June 6, 2000, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied August 16, 2000.

---

[6]In a supplemental brief filed after oral argument, appellant contends the trial court erred in failing to instruct concerning the factors necessary to the finding of multiple attempts. The jury was fully instructed concerning the elements of an attempted robbery and was told that each count charged a distinct crime and that each count was to be decided separately. The jury returned separate verdicts as to each victim. The instructions were sufficient.

In his supplemental brief appellant also argues that given the "uncommon circumstances here presented," CALJIC No. 6.02 (Abandonment of Attempt—When a Defense) was inadequate to explain the defense of abandonment. We disagree. The circumstances here were not so unique that CALJIC No. 6.02 was inadequate to explain that defense.

*See footnote 1, *ante*, page. 759.