[No. A119768. First Dist., Div. Four. Jan. 15, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
MANUEL CHRISTOPHER LUNA, Defendant and Appellant.

COUNSEL

William A. Welch for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Christopher W. Grove, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

RUVOLO, P. J.—

## I. INTRODUCTION

Appellant Manuel Christopher Luna was convicted by jury of attempting to manufacture a controlled substance (Health & Saf. Code, § 11379.6, subd. (a); Pen. Code, § 664). Appellant claims his conviction must be

reversed because "there is no evidence whatsoever that appellant ever advanced beyond mere planning or preparation." We agree with appellant that there was insufficient evidence to support his conviction. Consequently, we reverse.

## II. FACTS AND PROCEDURAL HISTORY

Around midnight on March 6, 2005, Mendocino County Deputy Sheriff Jason Lucas stopped appellant, who was driving a pickup truck with a camper shell, for a traffic violation. When appellant stepped out of his pickup truck, he appeared to be under the influence of alcohol, although he passed a field sobriety test.

During a consensual search of the pickup truck, Lucas found equipment used to manufacture hashish. These items included PVC (polyvinyl chloride) pipe, PVC glue, couplings, fittings, adapters, Teflon tape, Pyrex bowls, a butane burner, rubbing alcohol, activated carbon filters, and a metal spigot with an open/close valve. Lucas also found 299 bottles of butane, and a sales receipt indicating that the pipe fittings and a metal nozzle had just been purchased several hours earlier. Appellant was found to be in possession of a small quantity of marijuana and $1,200 in cash. When Lucas asked appellant if he had a hashish lab, appellant "half-heartedly" indicated that he did not.

California Department of Justice Senior Criminalist Matthew Kirsten, who qualified as an expert in manufacturing hashish, testified about all of the items that were found in appellant's truck and how they contribute to the manufacturing of concentrated cannabis, or as laypeople call it, hashish. He testified that in order to manufacture hashish using the "butane extraction method," PVC pipes are connected with fittings at one end to accommodate a butane canister, and at the other end to attach a spigot. All parts of the marijuana plant are placed inside the pipe and are held in place by a screen or mesh. The butane is then injected into the pipe, dissolving the marijuana plant resin that contains tetrahydrocannabinol (THC) and allowing it to be collected in its concentrated form. Kirsten believed that the equipment in appellant's possession had previously been utilized in the manufacture of hashish as evidenced by hash oil residue and part of a marijuana leaf found on some of the seized equipment. With respect to whether everything necessary to manufacture hashish was present in appellant's truck, he testified that "all one needed would be . . . the marijuana to continue that process." Kirsten testified that in order for appellant to actually begin manufacturing hashish, appellant would have had to obtain "grocery bags full of marijuana."

Appellant testified at trial. He testified that he was homeless and having trouble getting a job when he purchased the equipment to make hashish from

homeless persons in Golden Gate Park in San Francisco. The sellers explained the process of making hashish to appellant. Appellant acknowledged that he bought the equipment with the intention of making hashish. "I bought this stuff because it was presented to me for a low price and at the time I made a poor decision and I considered making hash." Appellant claimed, however, that he did not try to purchase marijuana after acquiring the remainder of the necessary equipment.

On September 27, 2007, a jury found appellant not guilty of manufacturing a controlled substance, but guilty of the lesser included offense of attempting to manufacture a controlled substance (Health & Saf. Code, § 11379.6, subd. (a); Pen. Code, § 664). On November 9, 2007, the court suspended imposition of sentence and placed appellant on probation. This appeal followed.

## III. DISCUSSION

In this case, the sole issue is whether the evidence is sufficient to sustain appellant's conviction for attempting to manufacture a controlled substance. (Health & Saf. Code, § 11379.6, subd. (a); Pen. Code, § 664.) In determining the sufficiency of the evidence to support a conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Huggins* (2006) 38 Cal.4th 175 [41 Cal.Rptr.3d 593, 131 P.3d 995].) "[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].)

■ Health and Safety Code section 11379.6, subdivision (a) punishes "every person who manufactures, compounds, converts, produces, derives, processes, or prepares, either directly or indirectly by chemical extraction or independently by means of chemical synthesis, any controlled substance . . . ." ■ The elements of a criminal attempt are "[(1)] a specific intent to commit the crime, and [(2)] a direct but ineffectual act done toward its commission." (Pen. Code, § 21a; see *People v. Toledo* (2001) 26 Cal.4th 221, 229 [109 Cal.Rptr.2d 315, 26 P.3d 1051].)

First, on the issue of intent, appellant himself testified that at the time he purchased the equipment, it was his intention to manufacture hashish by using "the butane extraction process." Appellant's counsel conceded at oral argument that appellant's intent to manufacture hashish was established by

his own testimony. In this case, the key dispute is the second component of an attempt crime. That is, whether appellant's actions had progressed to the point where they could be considered "a direct but ineffectual act done towards [the crime's] commission, i.e., an overt ineffectual act which is beyond mere preparation yet short of actual commission of the crime. [Citations.]" (*People v. Ross* (1988) 205 Cal.App.3d 1548, 1554–1555 [253 Cal.Rptr. 178].)

Appellant argues that his actions were not extensive enough to be considered an attempt because, when he was arrested, the manufacturing activity "had not advanced beyond planning or preparation." He emphasizes that he had not taken steps to begin the manufacturing process. In making this argument, appellant focuses on the absence of evidence that he "ever obtained or arranged to obtain THE essential ingredient necessary for manufacturing hashish, the starting material, marijuana . . . ." (Original capitalization.)

■ In considering appellant's argument, we first note that in a case such as this one "[w]here the intent to commit the crime is clearly shown, an act done toward the commission of the crime may be sufficient for an attempt even though that same act would be insufficient if the intent is not as clearly shown. [Citation.]" (*People v. Bonner* (2000) 80 Cal.App.4th 759, 764 [95 Cal.Rptr.2d 642]; see *People v. Anzalone* (2006) 141 Cal.App.4th 380, 387 [45 Cal.Rptr.3d 876].) "[T]he plainer the intent to commit the offense, the more likely that steps in the early stages of the commission of the crime will satisfy the overt act requirement. [Citations.]" (*People v. Dillon* (1983) 34 Cal.3d 441, 455 [194 Cal.Rptr. 390, 668 P.2d 697].) Thus, even " 'slight acts done in furtherance of that design will constitute an attempt, and the courts should not destroy the practical and common-sense administration of the law with subtleties as to what constitutes preparation and what constitutes an act done toward the commission of a crime.' [Citations.]" (*People v. Memro* (1985) 38 Cal.3d 658, 698 [214 Cal.Rptr. 832, 700 P.2d 446] (*Memro*); see *People v. Superior Court (Decker)* (2007) 41 Cal.4th 1, 8–9 [58 Cal.Rptr.3d 421, 157 P.3d 1017] (*Decker*).)

■ As our Supreme Court recently emphasized, "Whether acts done in contemplation of the commission of a crime are merely preparatory or whether they are instead sufficiently close to the consummation of the crime is a question of degree and depends upon the facts and circumstances of a particular case." (*Decker, supra,* 41 Cal.4th at p. 14.) Although the distinction between preparation and attempt may be difficult to gauge in some instances, our Supreme Court has given us this important guideline: " '[T]here is a material difference between the preparation antecedent to an offense and the actual attempt to commit it. The preparation consists of *devising or arranging*

*the means or measures necessary for the commission of the offense*, while the attempt is the direct movement toward its commission after the preparations are made. In other words, to constitute an attempt the acts of the defendant must go so far that they would result in the accomplishment of the crime unless frustrated by extraneous circumstances. [Citations.]' [Citations.]"[1] (*Memro, supra*, 38 Cal.3d at p. 698, italics added.)

In evaluating appellant's conduct, respondent argues that appellant took direct, but ineffectual steps toward the commission of the crime—beyond the mere noncriminal planning or preparation stages—and that those steps constitute " 'slight acts done in furtherance' " of his intent to commit the crime. (*Memro, supra*, 38 Cal.3d at p. 698.) Respondent relies on evidence from which the jury could reasonably infer that appellant knew how to manufacture hashish and that he had purchased the butane and equipment intending to make hashish. Some of the equipment in appellant's possession contained the indicia of previous manufacturing activity. Just hours before his arrest, appellant had purchased the last two legally obtainable items associated with manufacturing hashish from a hardware store. Appellant was also in possession of $1,200 in cash, which would be more than enough to purchase marijuana, the only missing ingredient for the manufacture of hashish.

As we have indicated, the critical issue is whether, at the time of his arrest, appellant had proceeded far enough down the path toward manufacturing hashish that a reasonable jury could find that he committed the crime of attempted manufacture. In analyzing the evidence supporting appellant's attempt conviction, we have not discovered any published California case addressing what constitutes "a direct but ineffectual act" toward manufacturing. (Pen. Code, § 21a.) However, there are numerous cases discussing the evidence necessary to support a conviction under Health and Safety Code section 11379.6, subdivision (a), which subjects to liability not only one who "manufactures" a controlled substance, but also one who "compounds, converts, produces, derives, processes, or prepares" such a substance.

---

[1] In discussing the quantum of conduct considered sufficient to establish a criminal attempt, the Model Penal Code, sets out the example of "possess[ing] materials to be employed in the commission of the crime . . . ." (Model Pen. Code, § 5.01, subd. (2)(e).) This type of evidence is sufficient if it is "strongly corroborative of the actor's criminal purpose." (Model Pen. Code, § 501, subd. (2).) There is no doubt that this approach has influenced the law of attempt in other jurisdictions; and if we followed it here, appellant's arguments would have no legal merit. (See, e.g., *U.S. v. Rahman* (2d Cir. 1999) 189 F.3d 88, 128–129; *People v. Lehnert* (Colo. 2007) 163 P.3d 1111, 1115; *State v. Sheikh* (2001) 30 Kan.App.2d 188, 191 [41 P.3d 290].) However, as our Supreme Court pointed out in *Dillon, supra*, 34 Cal.3d at pages 453–454, footnote 1, the evidence that the Model Penal Code finds to be legally sufficient to support an attempt conviction does not conform to California law because under the Model Penal Code standard "acts normally considered only preparatory could be sufficient to establish liability. [Citation.]"

Respondent points out that the conduct proscribed by Health and Safety Code section 11379.6, subdivision (a), the crime which appellant purportedly attempted, has been found to "criminalize all acts which are part of the manufacturing process, whether or not those acts directly result in completion of the final product." (*People v. Heath* (1998) 66 Cal.App.4th 697, 705 [78 Cal.Rptr.2d 240] (*Heath*).) In assessing how close appellant's conduct came to committing the actual offense, respondent claims "the fact that appellant was missing an ingredient for the extraction process does not invalidate the jury's determination of attempted manufacture of a controlled substance."

The case which is at the centerpiece of respondent's argument is *People v. Lancellotti* (1993) 19 Cal.App.4th 809 [23 Cal.Rptr.2d 640]. The defendant in *Lancellotti* stored most of the equipment and chemicals needed to manufacture methamphetamine at a commercial storage facility. (*Id.* at p. 812.) The locker was opened after storage facility personnel noticed an unusual odor, and it was found to contain chloropseudoephedrine " 'an immediate precursor of methamphetamine.' " (*Id.* at pp. 810–813.)

On appeal from his conviction for manufacturing methamphetamine (Health & Saf. Code, § 11379.6, subd. (a)), the *Lancellotti* court rejected defendant's argument that the evidence was insufficient to support his conviction because the storage unit lacked a certain piece of equipment and a reducing agent that were necessary to complete the methamphetamine manufacturing process. (*People v. Lancellotti, supra,* 19 Cal.App.4th at p. 811.) The court noted that the manufacture of methamphetamine is an incremental, as opposed to an instantaneous, process and is often conducted in a piecemeal fashion and moved from place to place to avoid detection. (*Ibid.*) The court reasoned, "The cumulative nature of the evidence in appellant's case, including the contents of the locker which all taken together are only used in the manufacture of methamphetamine, the presence of chloropseudoephedrine, a substance which cannot be purchased and is used only in the manufacture of methamphetamine, and the odor emanating from the locker, provide substantial evidence that the manufacture of methamphetamine, an incremental and not instantaneous process, was in progress." (*Id.* at p. 813.)

■ Relying on the *Lancellotti* decision, respondent asserts that "appellant took unequivocal intermediate steps towards making hashish with the avowed purpose of doing so" and therefore, "[s]ubstantial evidence supports [his] conviction." However, respondent misses the key point made in the *Lancellotti* decision. The *Lancellotti* court did not find that the defendant was guilty of the crime of manufacturing methamphetamine because he possessed certain pieces of equipment associated with the drug's manufacture. Rather, the defendant's conviction was upheld because there was evidence he had engaged in an intermediate step in the methamphetamine manufacturing

process. This point was emphasized by our Supreme Court in *People v. Coria* (1999) 21 Cal.4th 868 [89 Cal.Rptr.2d 650, 985 P.2d 970], when it cited *Lancellotti* for the proposition that Health and Safety Code section 11379.6, subdivision (a) "makes it unlawful to engage in the chemical synthesis of a substance as one part of the process of manufacturing a controlled substance." (*People v. Coria, supra*, at p. 874.)

Numerous cases illustrate the point that Health and Safety Code section 11379.6, subdivision (a) is aimed at ongoing manufacturing operations. Thus, while the manufacturing process need not be complete, it must at least be *started.* (See, e.g., *People v. Jackson* (1990) 218 Cal.App.3d 1493, 1503–1504 [267 Cal.Rptr. 841]; *People v. Stone* (1999) 75 Cal.App.4th 707, 713–714 [89 Cal.Rptr.2d 401] (*Stone*); *Heath, supra*, 66 Cal.App.4th at p. 705; *People v. Combs* (1985) 165 Cal.App.3d 422, 427 [211 Cal.Rptr. 617]; *People v. Hard* (2003) 112 Cal.App.4th 272, 279 [5 Cal.Rptr.3d 107].) These decisions illustrate that Health and Safety Code section 11379.6, subdivision (a), criminalizes participation in each and every stage of the manufacturing process, "from inception through completion." (*Stone, supra*, 75 Cal.App.4th at p. 715.)

■ In reviewing the record in this case, we find no act—not even a slight act—on the part of appellant that goes beyond preparation and can be regarded as an "unequivocal overt act which can be said to be a commencement of the commission of the intended crime. [Citation.]" (*People v. Adami* (1973) 36 Cal.App.3d 452, 458 [111 Cal.Rptr. 544], disapproved on other grounds in *Decker, supra*, 41 Cal.4th at pp. 10–13.) At the time appellant was arrested, he had no ability to begin manufacturing hashish, which expert opinion established is an instantaneous as opposed to an incremental process. In order to begin manufacturing hashish, appellant still had numerous steps to accomplish, including assembling the components of the manufacturing device, which were found unassembled and in pieces in appellant's truck. He also had to obtain the key ingredient, "grocery bags full of marijuana."

■ We acknowledge that the line between preparation and an attempt is often indistinct. However, we conclude that this line has not been crossed where the prosecution's evidence shows that a defendant is still engaged in preparatory acts and that there is a complete inability to take even initial steps toward producing the finished product. After all, " 'planning the offense' " and " 'devising, obtaining or arranging the means for its commission' " are merely aspects of preparation. (*Dillon, supra*, 34 Cal.3d at p. 452.) Moreover, " '[p]reparation alone is not enough [to establish an attempt], there must be some appreciable fragment of the crime committed[ and] it must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter . . . .' [Citation.]" (*Id.* at p. 454; see

*Memro, supra,* 38 Cal.3d at p. 698.) We believe the acts undertaken by appellant were too preliminary to indicate with any certainty that "a crime [was] about to be consummated absent an intervening force . . . ." (*Dillon, supra,* 34 Cal.3d at p. 455.) Consequently, we conclude that the evidence is insufficient to sustain appellant's conviction for attempting to manufacture a controlled substance. (Health & Saf. Code, § 11379.6, subd. (a); Pen. Code, § 664.)

## IV. DISPOSITION

The judgment is reversed.

Sepulveda, J., and Rivera, J., concurred.