**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JOSE MARTIN SAAVEDRA-
VELAZQUEZ,
*Defendant-Appellant.*

No. 08-10078

D.C. No.
CR07-065-LRH-
RAM

OPINION

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted
April 14, 2009—San Francisco, California

Filed August 21, 2009

Before: Stephen Reinhardt, Eugene E. Siler, Jr.,* and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Reinhardt;
Special Concurrence by Judge Reinhardt

---

*The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge
for the Sixth Circuit, sitting by designation.

## COUNSEL

Michael K. Powell, Assistant Federal Public Defender, Reno, Nevada, for the defendant-appellant.

Gregory Bower, United States Attorney, Robert L. Ellman, Appellate Chief, Elizabeth A. Olson and Ronald C. Rachow, Assistant United States Attorneys, Reno, Nevada, for the plaintiff-appellee.

## OPINION

REINHARDT, Circuit Judge:

As an "attempt" in the state of California requires only "*slight acts* in furtherance of the [criminal] design," *People v. Superior Court*, 157 P.3d 1017, 1022 (Cal. 2007) (emphasis added), one would reasonably expect that the California definition was categorically broader than the definition at common law, which requires a "*substantial step* towards committing the crime," *United States v. Sarbia*, 367 F.3d 1079, 1085-86 (9th Cir. 2004) (emphasis added). Strangely enough, however, we are required by precedent to conclude that the two definitions are functionally equivalent.

### I.

Jose Martin Saavedra-Velazquez ("Saavedra-Velazquez"), a native and citizen of Mexico, first entered the United States more than thirty years ago. He has spent the vast majority of his life in this country, was married to a United States citizen, and has a United States citizen son.

From 1999 to 2007, Saavedra-Velazquez was removed from the United States on four separate occasions, most recently on March 3, 2007. After once again illegally reentering the United States, he was arrested for a misdemeanor offense in Reno, Nevada on June 17, 2007. He was at the time on supervised release following a 2005 conviction for illegal reentry after deportation. Saavedra-Velazquez was indicted by the grand jury for illegal reentry by a deported alien in violation of 8 U.S.C. § 1326(a) and entered an unconditional guilty plea.

At sentencing, the district court placed Saavedra-Velazquez in a criminal history category VI, with an advisory Sentencing Guidelines range of 77-96 months. Saavedra-Velazquez had accumulated a number of arrests and felony convictions over

the course of his time in the United States. Most resulted in relatively short periods of incarceration, none of which lasted longer than three years. For the previous ten years, Saavedra-Velazquez had no violent criminal history. In 1989, however, he was convicted of felony attempted robbery under Cal. Penal Code § 211. On account of this conviction, the district court determined that he "previously was deported . . . after . . . a conviction for a felony that is . . . a crime of violence" and, in calculating Saavedra-Velazquez's advisory Sentencing Guidelines range, included a 16-level upward adjustment of his base offense level pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii).

Saavedra-Velazquez argued at sentencing that the California conviction for attempted robbery was not, categorically, a "crime of violence" for the purposes of U.S.S.G. § 2L1.2, and that the 16-level upward adjustment should not be applied. The district judge, relying on *United States v. McDougherty*, 920 F.2d 569 (9th Cir. 1990), disagreed. The judge nevertheless sentenced Saavedra-Velazquez to only 41 months in prison, well below the Guidelines range,[1] due in part to his showing of "cultural assimilation" and to the fact that, for ten years, he had no violent criminal history.[2]

Saavedra-Velazquez appeals the determination that his attempted robbery conviction is a crime of violence and the resulting 16-level upward adjustment of his base offense level. We have jurisdiction over his appeal pursuant to 28

---

[1]Although the Guidelines are no longer mandatory, *United States v. Booker*, 543 U.S. 220, 245 (2005), the sentencing court's first obligation is to make the Guidelines calculation. *Gall v. United States*, 128 S. Ct. 586, 596 (2007). A failure to do so correctly is reversible error. *United States v. Gomez-Leon*, 545 F.3d 777, 782 (9th Cir. 2008) (citing *Gall*, 128 S. Ct. at 597; *United States v. Carty*, 520 F.3d 984, 991-93 (9th Cir. 2008) (en banc), *cert. denied sub nom. Zavala v. United States*, 128 S. Ct. 2491 (2008)).

[2]The judge additionally sentenced Saavedra-Velazquez to 12 months for revocation of supervised release, which is not at issue in this appeal.

U.S.C. § 1291 (granting jurisdiction to hear "appeals from all final decisions of the district courts of the United States") and 18 U.S.C. § 3742 (granting jurisdiction to review a sentence "imposed as a result of an incorrect application of the sentencing guidelines"). We review de novo "a district court's determination that a prior conviction qualifies as a 'crime of violence' under the Guidelines . . . ." *United States v. Rodriguez-Guzman*, 506 F.3d 738, 740-41 (9th Cir. 2007) (citation omitted).

## II.

The first question before us is whether *completed* robbery under Cal. Penal Code § 211 is a "crime of violence" for purposes of the Sentencing Guidelines. Saavedra-Velazquez has conceded, and we agree, that intervening case law since the filing of his appeal has settled this question definitively in the affirmative. *See United States v. Becerril-Lopez*, 541 F.3d 881 (9th Cir. 2008).

## III.

We next consider whether California's definition of "attempt" is broader than the common law definition, such that *attempted* robbery is not a "crime of violence."

## A.

Saavedra-Velazquez makes this argument for the first time on appeal. We generally review arguments not raised before the district court for plain error. *See Johnson v. United States*, 520 U.S. 461, 466-67 (1997). However, we are not limited to this standard of review when we are presented with a question that "is purely one of law" and where "the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court . . . ." *United States v. Echavarria-Escobar*, 270 F.3d 1265, 1267-68 (9th Cir. 2001). In *Echavarria-Escobar*, an alien convicted of illegal reentry under 8 U.S.C.

§ 1326 challenged his sentence enhancement for the first time on appeal on the ground that his prior conviction was not, as a matter of law, an aggravated felony. Because the question presented was purely legal, we did not restrict ourselves to plain error review. Here, too, the question whether an "attempt" under California law is broader than an "attempt" at common law is a pure question of law, and the government, which has fully briefed the issue, suffers no prejudice. We therefore will not apply plain error review.

## B.

**[1]** The Sentencing Guidelines provide for a 16-level upward adjustment "[i]f the defendant previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii). "Robbery," among other enumerated offenses, is a "crime of violence." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). "[A]iding and abetting, conspiring, and *attempting*, to commit" an offense that would be a "crime of violence" if completed qualifies as such, as well. U.S.S.G. § 2L1.2 cmt. n.5 (emphasis added).

**[2]** Saavedra-Velazquez argues that, under the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575 (1990), his prior attempted robbery conviction is a "crime of violence" only if California's definition of *both* "robbery" *and* "attempt" are coextensive with the respective common law definitions. We agree.[3] In *United States v. Sarbia*, which is

---

[3]The Government correctly points out that we have in the past found an inchoate offense to be a "crime of violence" without inquiring whether the state definition of "attempt" was broader than the common law definition. *See, e.g.*, *United States v. Bolanos-Hernandez*, 492 F.3d 1140 (9th Cir. 2007) (assault with intent to commit rape, which is akin to aggravated attempted rape, is a crime of violence for purposes of U.S.S.G. § 2L1.2); *United States v. Hernandez-Valdovinos*, 352 F.3d 1243 (9th Cir. 2003) (attempted sale of narcotic drugs is a "drug trafficking offense" for purposes of U.S.S.G. § 2L1.2); *United States v. Riley*, 183 F.3d 1155 (9th Cir. 1999) (attempted "simple rape" is a "crime of violence" for purposes of U.S.S.G. § 4B1.2). None of these cases, however, directly considered whether the second inquiry was necessary.

dispositive here, we engaged in precisely this two-pronged analysis to determine whether in Nevada an attempt to commit a "crime of violence" is itself a "crime of violence" under U.S.S.G. § 2L1.2. 367 F.3d at 1084-86. In *United States v. Taylor*, we analyzed whether Arizona's definition of "attempt" is broader than the federal or common law definition in order to determine whether "attempted armed robbery" is a "crime of violence" under the Guidelines. 529 F.3d 1232, 1237-38 (9th Cir. 2008). We further explained in *Rebilas v. Mukasey* that

> [t]o hold that [the] conviction was categorically a conviction for attempted sexual abuse of a minor . . . , we would have to hold not only that Arizona's definition of public sexual indecency to a minor . . . was categorically sexual abuse of a minor, but also that Arizona's definition of attempt . . . was a categorical match with the federal definition of attempt. This would require a second *Taylor* analysis, comparing the elements of attempt under Arizona law and the elements of attempt under [federal law].

527 F.3d 783, 787 (9th Cir. 2008). We reaffirm here that a prior state conviction for an attempt to commit an offense that would qualify as a "crime of violence" is itself categorically a "crime of violence" only if the state definition of attempt is no broader than the corresponding federal or common law definition.

## C.

The final question is whether the definition of "attempt" under California law is coextensive with the common law meaning. We resolve that question by adhering, as we are bound to do, to *Sarbia*, in which we held that Nevada's definition of "attempt" — which appears to be virtually indistinguishable from that in California — is coextensive with the federal or common law definition. 367 F.3d at 1086. We do

so notwithstanding what in all other circumstances would be an outright contradiction between the language of the two definitions.

**[3]** "At common law an 'attempt[ ]' was defined as the specific intent to engage in criminal conduct and . . . an overt act which is a *substantial step* towards committing the crime." *Sarbia*, 367 F.3d at 1085-86 (citations and quotation marks omitted) (emphasis added). The Model Penal Code has defined "attempt" in a similar fashion:

> A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he . . . . purposely does or omits to do anything that, under the circumstances as he believes them to be, is an act or omission constituting a *substantial step* in a course of conduct planned to culminate in his commission of the crime.

Model Penal Code § 5.01(1)(c) (emphasis added). In interpreting the federal definition of attempt, we have held that the "step toward commission of the crime" must be "of *such substantiality* that, unless frustrated, the crime would have occurred." *United States v. Buffington*, 815 F.2d 1292, 1303 (9th Cir. 1987) (emphasis added).

**[4]** California — like Nevada — defines attempt rather differently. The two statutory elements of attempt are "a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." Cal. Penal Code § 21a. Case law has expanded upon this statutory definition. To constitute an attempt, the act in question must go beyond mere preparation: It "must go so far that [it] would result in the accomplishment of the crime unless frustrated by extraneous circumstances," and it must complete "some appreciable fragment of the crime." *People v. Memro*, 700 P.2d 446, 474 (Cal. 1985) (citations omitted), partially overruled on other grounds

by *People v. Gaines*, 92 Cal. Rptr. 3d 627, 635 (2009). "However, an overt act need not be the ultimate step toward the consummation of the design; it is sufficient if it is the first or some subsequent act directed towards that end after the preparations are made." *Id.* (internal citations, quotation marks, and alterations omitted). Most important here, "[a]lthough a definitive test has proved elusive, [California] ha[s] long recognized that '[w]henever the design of a person to commit crime is clearly shown, *slight acts* in furtherance of the design will constitute an attempt.' " *Superior Court*, 157 P.3d at 1022 (citation omitted) (emphasis added).

**[5]** The semantic disconnect between "slight acts" (required under California law) and a "substantial step" (required at common law) is obvious. *Sarbia* cautions, however, that a "mere" difference in terminology is insufficient to render the two definitions of "attempt" substantively distinct. Indeed, in *Sarbia* we concluded after reviewing Nevada case law that Nevada's similar use of the terms "some act" or "slight act" had "the same operational meaning as 'substantial step,' as used in the traditional common-law definition of attempt." 367 F.3d at 1086.

**[6]** We must determine whether California's definition of "attempt" likewise "has the same operational meaning" as the common law definition. Upon a review of numerous California court of appeal and state supreme court decisions on attempt, we have found no meaningful way in which California's use of the term "slight acts" differs from Nevada's, and consequently no distinction under *Sarbia* between the "operational meaning" of attempt under California law and the common law definition.[4] *Sarbia* acknowledged that, pursuant to

---

[4]Saavedra-Velazquez contends that California law is broader than Nevada law because one California case that was cited in a Nevada case has since been expressly disapproved by the California supreme court. *See Johnson v. Sheriff*, 532 P.2d 1037 (Nev. 1973) (citing *People v. Adami*, 36 Cal. App. 452 (Cal. App. 1973); *see also Superior Court*, 157 P.3d at 1026

Nevada case law, "when the design of a person to commit a crime is clearly shown, *slight acts* done in furtherance of that crime will constitute an attempt." *Van Bell v. State*, 105 Nev. 352, 354 (1989) (emphasis added); *Sarbia*, 367 F.3d at 1086 (citing *Van Bell*). Were we to conclude, as Saavedra-Velazquez urges, that on the basis of the term "slight acts" California's definition is broader than the common law definition, we would be unable to reconcile our conclusion with the opposite holding in *Sarbia.*

Moreover, we have been unable to identify — and Saavedra-Velazquez has not cited — any cases in which the *application* of the California test is inconsistent with the common law. This, however, is the showing that *Sarbia* and Supreme Court case law require:

> [T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic possibility, an offender, of course, may show that the statute was so applied in his own case. *But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.*

(disapproving *Adami*). We disagree. *Adami* "held there was no 'attempt' where, besides solicitation and discussion, there had been the payment of a sum of money to the proposed 'hit man.' " *Johnson*, 532 P.2d at 1038. In *Johnson*, the facts were limited to solicitation and discussion of hiring an assassin, without payment. *Adami*, therefore, set a more stringent standard for attempt than *Johnson*, and when *Superior Court* disapproved *Adami*, it did not suggest that it would have similarly disapproved the holding in *Johnson*. *Johnson*, moreover, cited *Adami* only by way of comparison and did not adopt that decision as the law of Nevada.

*Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) (emphasis added). Our review here has turned up not a single appellate case in which an attempt conviction upheld in California would not have been sustained at common law; in which the result turned upon how slight the "slight acts" were; or in which the court compared the "slight acts" requirement to the "substantial step" requirement and found the former to be broader.[5]

Although the California courts frequently cite the "slight

---

[5]The cases that Saavedra-Velazquez cites do not prove his point. In *People v. Moran*, 122 P. 969, 970 (Cal. App. 1912), the court found sufficient "overt acts" to support an attempt where the defendant pushed open a saloon door and partly entered the saloon with the intent to commit robbery, but finding a large number of people there, did not complete the crime. The case nowhere states that the acts were "slight." More recently, in *Superior Court*, 157 P.3d 1017, the California supreme court upheld an attempted murder conviction where the defendant "solicit[ed] the murder of his sister, reach[ed] an agreement with a hired assassin to do the killing, . . . ma[de] a [$5,000] downpayment under the agreement," and furnished the assassin (really an undercover police officer) with a full description of his sister and her whereabouts. *Id.* at 1026 (Werdegar, J., dissenting). Although the "slight acts" test was discussed in some detail in the majority opinion, *see id.* at 1022-23, the issue vehemently disputed in the dissent was not whether the acts in question were "slight" or "substantial," but rather whether they constituted mere preparation or *direct acts* toward the commission of the offense. *Id.* at 1026-27. The supreme court found sufficient evidence of an attempt on the basis of a test that mirrors, almost precisely, the Ninth Circuit's definition of a "substantial step":

> When, by reason of the defendant's conduct [i.e., the slight act], the situation is "without any equivocality," and *it appears the design will be carried out if not interrupted*, the defendant's conduct satisfies the test for an overt act. Here, the record supported . . . that *he had commenced the commission of the crime by doing all that he needed to do to accomplish the murders.*

*Id.* at 1025-26 (emphasis added); *see also Buffington*, 815 F.2d at 1303 (requiring, in the Ninth Circuit, a "step toward commission of the crime . . . of such substantiality that, unless frustrated, the crime would have occurred"). We cannot say that these acts were "slight" but not "substantial," nor that there would have been any other result at common law.

acts" standard, they do so alongside more stringent language that is at least as restrictive as the common law definition. *See, e.g.*, *Memro*, 700 P.2d at 474 ("[T]o constitute an attempt the acts of the defendant must go so far that they would result in the accomplishment of the crime unless frustrated by extraneous circumstances" (citation omitted).). In fact, California courts have suggested that the "slight acts" test is more stringent than the Model Penal Code "substantial step" requirement, because the Model Penal Code permits, in certain circumstances, preparatory acts to constitute an attempt, while California requires a *direct act* (albeit slight). *People v. Dillon* explained:

> [i]ndeed, the draftsmen of the Model Penal Code would require even less [than California does], making punishable as an attempt any act or omission that constitutes "a substantial step in a course of conduct planned to culminate in . . . commission of the crime," so long as that step is "strongly corroborative of the actor's criminal purpose." Under this standard, acts normally considered only preparatory could be sufficient to establish liability.

668 P.2d 697, 702 n.1 (Cal. 1983) (citations omitted); *see also People v. Luna*, 170 Cal. App. 4th 535, 541 n.1 (Cal. App. 1 Dist. 2009).

**[7]** Because Saavedra-Velazquez has been unable to point to a case in which the requirement of a "slight act" rather than a "substantial step" has led to a different outcome under California law than it would at common law, and because Nevada's "slight acts" standard appears virtually identical to California's, we hold that an "attempt" under California law is coextensive with an "attempt" at common law.

## IV.

**[8]** Felony robbery in California is a "crime of violence," and California's definition of "attempt" is coextensive with

the common law definition. We conclude, therefore, that Saavedra-Velazquez's felony attempted robbery conviction was a "crime of violence" as defined by the Sentencing Guidelines. The district court did not err in calculating the advisory Sentencing Guidelines range to include a 16-level upward adjustment to his base offense level pursuant to U.S.S.G. § 2L1.2(b)(1)(A). The sentence imposed by the district court is therefore

**AFFIRMED.**

REINHARDT, Circuit Judge, specially concurring:

It does not take a learned legal scholar to grasp the difference between the words "slight" and "substantial," but it does, apparently, take members of the judiciary to equate the two terms. Such verbal gyrations are not limited to the circuit courts. The Supreme Court has, for example, construed "another state" to include the "same state," thus giving the Eleventh Amendment a totally opposite meaning than that provided by the words themselves.[1]

"Slight" and "substantial" are opposites — according to the dictionary if not the Federal Reporter. "Slight" is defined as "small in amount, degree, etc." or "of little importance . . . ; trivial." *E.g.*, Random House Dictionary of the English Language 1340 (1979). "Substantial," by contrast, means "of

---

[1]The Eleventh Amendment reads, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of *another State*, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI (emphasis added). The Supreme Court has recently reaffirmed its view, however, that the Amendment applies to suits brought by citizens of the same state. *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 446 (2004) (citing, *inter alia*, *Hans v. Louisiana*, 134 U.S. 1, 15 (1890).).

ample or considerable amount, quantity, size, etc." or "essential, material, or important." *Id.* at 1418. Today we have compared a definition of attempt that requires an act "of little importance" with a definition of attempt that requires an act that is "essential, material, or important," and we have held that the two standards are the same. That conclusion is nonsensical. It is not our function to devalue the English language by disregarding the meaning of words.

Nevertheless, because California's "slight acts" test appears to be indistinguishable from the test employed in Nevada, I am bound by *Sarbia* and therefore compelled to reach the conclusion that I and my colleagues unanimously do. My obligation to follow precedent must override both logic and my sensibilities — not for the first time and, I am sure, not for the last.