Filed 10/25/23  P. v. Sandoval CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MELECIO SANDOVAL,<br><br>    Defendant and Appellant. | A165364<br><br>(Humboldt County<br>Super. Ct. Nos. CR1805473,<br>CR2101609) |

Melecio Sandoval, convicted by a jury of attempted robbery, contends the prosecutor peremptorily challenged an African American venireperson for racially discriminatory reasons; the trial court improperly limited voir dire and failed to instruct the jury on lesser included offenses; and the evidence was insufficient to prove attempt.  We affirm.

### BACKGROUND

Kayla S. was walking home with her phone in her hand when she heard someone running and talking loudly behind her. She turned around and saw Sandoval approaching from about 20 feet away.  He ran about five feet beyond her, turned to face her, and said " '[g]ive me your money, bitch.' "  His tone was angry and demanding and he leaned toward her in an aggressive stance with his arms held out, his fists clenched, and his feet apart.

1

Kayla said she had no money. Sandoval responded, " 'Yes, you do, bitch.' "

Kayla held her ground, telling Sandoval she would "go on [her] way and he was gonna go on his way." Sandoval turned and resumed walking in the direction Kayla had been heading. Kayla also resumed her walk home, but Sandoval turned, lunged at her, and said " 'Don't follow me, bitch.' " Kayla responded that she was just trying to go home, reiterating that they would each go their own ways and not have any trouble.

Seeing Kayla's phone, Sandoval said " 'Don't call 911, bitch.' " She put the phone in her pocket, held her hands up, assured him she wouldn't, and crossed to the opposite side of the street. As she walked, Sandoval yelled at her " 'You're ugly, bitch. You're such an ugly bitch' " and " 'You fuck,' " over and over.

Kayla kept an eye on Sandoval until he was out of sight, then ran home and called 911. Sandoval was arrested about a block from her house and charged with attempted robbery.

## DISCUSSION

### A.

Sandoval contends the court erred when it rejected his *Batson-Wheeler*[1] challenge to the prosecutor's peremptory challenge of an African American venireperson. He asserts that (1) the sole African American's removal from the venire established a prima facie case of a discriminatory purpose; and (2) the prosecutor's explanation for the challenge was unsupported by the record.

---

[1] *Batson v. Kentucky* (1986) 476 U.S. 79, 89 and *People v. Wheeler* (1978) 22 Cal.3d 258, 276-277

**1.**

The trial court analyzes a *Batson-Wheeler* motion using a three-part test.  First, the defendant must make out a prima facie case with facts sufficient to support an inference of discriminatory purpose.  Second, if the defendant succeeds in making that showing, the burden shifts to the prosecutor to provide a race-neutral reason for the strike. Third, the court evaluates the prosecutor's proffered reason and determines whether it is legitimate or pretextual.  (*People v. Baker* (2021) 10 Cal.5th 1044, 1071; accord, *Johnson v. California* (2005) 545 U.S. 162, 168, 170-171.)  The court may consider the prosecutor's demeanor, the reasonability (or lack of it) of the proffered reason, and whether it has some basis in accepted trial strategy. (*Johnson v. California, supra,* at pp. 170-171.)[2]

We review the court's determination with great restraint, presuming the strike is constitutional and deferring to the court if it made a " ' " 'sincere and reasoned effort' " ' " to evaluate the nondiscriminatory justifications.  (*People v. Ervin* (2000) 22 Cal.4th 49, 75.)

---

[2] In 2020, the Legislature enacted Code of Civil Procedure section 231.7 (Assem. Bill No. 3070 (2019-2020 Reg. Sess.), Stats. 2020, ch. 318, §§ 1-3), codifying the *Batson/Wheeler* principle that peremptory challenges may not be based on a prospective juror's race.  (Code Civ. Proc., § 231.7, subd. (a).)  Pursuant to the new statute, the court need not find purposeful discrimination to sustain the objection but, rather, that "there is a substantial likelihood that an objectively reasonable person would view race . . . as a factor in the use of the peremptory challenge." (*Id.*, § 231.7, subd. (d)(1).)  Sandoval's jury was selected before the law's January 1, 2022, operative date (*Id.,* § 231.7, subd. (i)), so it does not apply to this case.

**2**.

M.U. was the sole African American in the jury venire. She testified in response to the court's questions that she had been charged with petty theft in 2009 or 2010. The charges were resolved to her satisfaction with "no court or anything." The prosecutor did not question M.U. and, over a defense objection, used a peremptory challenge to excuse her.

Out of the potential jurors' presence, Sandoval's counsel argued M.U.'s removal from the jury violated *Batson-Wheeler* because she was the only African American in the venire. Counsel emphasized that the prosecutor had not questioned M.U. and had not struck any other juror who had a criminal conviction. The prosecutor responded that, while M.U. was the only African American juror to be seated, until that point he had exercised peremptory challenges only against White jurors.

Turning to his reasoning, the prosecutor said he excused M.U. "because she had been accused of a petty theft. It was not exactly clear from her answers how that [was] resolved, but my perception of it was that she had accepted responsibility for that in some fashion." It was not that anyone with some sort of criminal history would be inappropriate to sit on the jury, "[b]ut someone who's been accused of a theft offense or committed theft activity in the past, that's just simply too close to the charges . . . . And, frankly, I think it would be malpractice for the People to keep a juror with something like that in their background that is so close to the facts of this case."

Without indicating whether it found Sandoval had made a prima facie case of a discriminatory purpose, the court ruled the prosecutor had excluded M.U. for a nondiscriminatory reason. It also commented that "most of the county is Caucasian. However, we do have still left on this jury some diversity and individuals from different ethnic backgrounds, and the Court will note that

4

the defense also excused at least one Hispanic prospective juror . . . [¶] . . . [¶] and that there are others."

**3.**

We cannot tell from this record whether the court denied Sandoval's *Batson-Wheeler* challenge on the first prong—because he failed to make out a prima facie case of discrimination—or the second—because it accepted the prosecutor's non-racial reason for the strike. (See *People v. Taylor* (2010) 48 Cal.4th 574, 612-613 [trial court's request that prosecutor give reason for peremptory challenge is not an implicit finding that defendant established prima facie case]; *cf. People v. Scott* (2015) 61 Cal.4th 363, 391 [where trial court finds no prima facie case of discrimination but allows the prosecutor to state reasons and rejects challenge, reviewing court should begin analysis by reviewing prima facie ruling].) The ambiguity, however, does not matter here. Assuming without deciding that the court found a prima facie case of discrimination, it reasonably determined the prosecutor provided a legitimate reason for dismissing M.U.

To satisfy its burden of showing a race-neutral reason, the opponent of a *Batson-Wheeler* motion must provide a clear and reasonably specific explanation for the challenge. (*People v. Gutierrez* (2017) 2 Cal.5th 1150, 1158.) The prosecutor did so here; M.U. had been charged with a theft offense some dozen years earlier and was therefore "too close" to Sandoval's charged offense to serve as a juror. Although M.U. said she was satisfied with the resolution of her case, the prosecutor could reasonably be concerned that a person who had been charged with a theft offense would be sympathetic to the defense.

Sandoval's contrary arguments are unpersuasive. First, that M.U.'s case had been resolved without a trial did not make the prosecutor's explanation unreasonable. Second, Sandoval's claim that the "facts in the record are objectively contrary to the

5

prosecutor's statements" is contradicted by M.U.'s testimony that she had been charged with a theft offense. Third, a comparative juror analysis does not, as he asserts, reveal purposeful discrimination. Five prospective jurors reported having been in traffic court, and one had received a DUI. None of them, however, had been charged with a theft-related offense. As the prosecutor explained, he struck M.U. not because she had "some type of criminal history," but because she had been charged with a crime similar to Sandoval's. The trial court reasonably accepted this explanation. (See *People v. Ledesma* (2006) 39 Cal.4th 641, 679 [comparative analysis did not show discriminatory purpose where prosecutor struck prospective juror with prior weapons and DUI convictions but not others with speeding tickets]; *cf. Miller-El v. Dretke* (2005) 545 U.S. 231, 241 [proffering reason for striking African American panelist that applied equally to otherwise similar non-African American venirepersons selected for jury tended to prove purposeful discrimination].)

### B.

### 1.

Sandoval raises two further challenges to the jury selection procedures. He contends the court violated his right to an impartial jury by: (1) allowing counsel only 10 minutes to question the first panel of 18 prospective jurors; and (2) altogether prohibiting counsel from directly questioning the second panel of seven prospective jurors.

At the outset of jury selection, the court advised the parties that it would question all prospective jurors and select an initial group of 18 for further individual questioning. The parties would then have 10 minutes each to question this group, and the court would follow up with any additional questions counsel requested: "If there are any areas that you want me to question further,

6

general areas that you want me to question or specific questions that you have for jurors that you haven't been able to ask, then just let me know and I'll ask more questions." When defense counsel objected to the time limit, the court responded that 10 minutes was not arbitrary and was twice the amount of time it usually allowed.

The court described the questions it would ask the prospective jurors and asked counsel to identify any other areas of questioning they wished it to pursue. It agreed to ask two questions requested by the prosecutor and five of six questions from the defense, including whether the jurors had any general racial bias or specific animus against Hispanic people. The court then asked whether the parties had additional questions they wanted it to ask. Defense counsel said no.

The court questioned the first 18 prospective jurors as a group and individually. When it finished, it stated, "Counsel, if you need more, I can inquire on those."

Defense counsel questioned the prospective jurors about the reasonable doubt standard, their views on homelessness and the homeless, and their past experiences as crime victims. None of counsel's questions concerned potential racial bias. The prosecutor's questions, in turn, focused on the standard of proof and the jurors' duty not to be influenced by bias, sympathy, prejudice, or potential penalty.

The parties exercised peremptory challenges and the court excused potential jurors for cause. It then called and questioned seven additional prospective jurors, two of whom were eventually seated as jurors 4 and 10. After questioning this second group, the court asked counsel whether they wanted to approach the bench or to exercise peremptory challenges. Defense counsel asked, "Do we get to question the panel?" The court said they did

not.  After an unreported bench conference, both sides exercised peremptory challenges.

Sandoval moved for a mistrial, challenging the time limit for voir dire and the court's refusal to allow counsel to question the second juror panel, particularly as to racial bias.  The court denied the motion.

The court next called and questioned another seven jurors, this time allowing counsel to question them directly.  It excused one juror for cause and each side exercised their final peremptory challenges.  The court then called and questioned another five prospective jurors, including the person eventually seated as juror 9.

Defense counsel objected that the court had not allowed her to question three of the seated jurors.  The court responded: "Well, as far as defense being permitted to ask questions, you were given the chance to ask questions of anyone else, and I did specifically ask that."  It then questioned a potential alternate juror and swore the jury in.

After the verdict, Sandoval unsuccessfully moved for a new trial on the ground, in part, that the court arbitrarily limited the time for voir dire and failed to ask all but one of the jurors about potential bias against Hispanic people.

**2.**

Code of Civil Procedure section 223, subdivision (b)(2) provides that trial courts in criminal cases "shall not impose specific unreasonable or arbitrary time limits or establish an inflexible time limit policy for voir dire."  Sandoval contends the trial court prejudicially violated this provision by limiting his voir dire of the first 18 jurors to 10 minutes.  We are unpersuaded.

Trial courts have both the duty to reasonably restrict voir dire to expedite the trial (*People v. Virgil* (2011) 51 Cal.4th 1210, 1246) and considerable discretion in limiting the time for parties to directly question prospective jurors. (*People v. Debose* (2014) 59 Cal.4th 177, 194.) Reviewing the record for abuse of that discretion (see *People v. Waidla* (2000) 22 Cal.4th 690, 713-714), we find nothing warranting reversal. To be sure, the time was short. But the trial was neither factually nor legally complex. It involved only three witnesses and two hours of testimony. And it lasted less than two days, including deliberations. The court advised counsel that it would ask additional questions they could propose after exhausting their time. Counsel made no such request. While we question the wisdom of the 10-minute limit, which may well be inadequate in other trials, here we would find it harmless even assuming it exceeded the court's discretion. (See *People v. Holt* (1997) 15 Cal.4th 619, 661 [error in manner of conducting voir dire reversible if fundamentally unfair trial results].)

Precluding any direct questioning of the second panel (and possibly a subsequent group), however, was definitely error.[3] As Sandoval observes, this prohibition violated the legislative directive that, subject to reasonable limits, "counsel for each party *shall have the right* to examine, by oral and direct questioning, any of the prospective jurors" after the court's initial examination (Code Civ. Proc., § 223, subds. (a), (b)(1), italics added.) Sandoval's counsel was denied that right.

---

[3] In addition to the second panel, Sandoval asserts he was not allowed to question a prospective juror (later seated as juror 9) whom the court questioned later in the proceedings, *after* it had allowed counsel to personally question a third panel of venirepersons. We will assume for purposes of discussion that counsel was not allowed to question juror 9, although the record does not show defense counsel either asked to or was prohibited from doing so.

The question, then, is whether the error warrants reversal. "Unless the voir dire by a court is so inadequate that the reviewing court can say that the resulting trial was fundamentally unfair, the manner in which voir dire is conducted is not a basis for reversal." (*People v. Holt*, *supra,* 15 Cal.4th at p. 661, citing *Mu'Min v. Virginia* (1991) 500 U.S. 415, 425-426; *People v. Asbury* (2016) 4 Cal.App.5th 1222, 1230.) Here, again, we cannot say the record demonstrates a fundamentally unfair trial. Sandoval identifies nothing in the court's examination—which did include questions about bias—that indicates jurors from the second group were racially biased or otherwise suggested a need for follow-up questions. Moreover, had counsel perceived such a need, she could have accepted the court's offer to ask further questions—including questions aimed at discerning implicit bias, the primary focus of Sandoval's argument in this court. No fundamental unfairness appearing, the record presents no basis for reversal.

## C.

Sandoval contends the evidence was insufficient to prove he attempted to rob Kayla because he was unarmed and did not touch or threaten her with violence. The contention is meritless.

Penal Code section 211 defines robbery as "the felonious taking of personal property in the possession of another, from [their] person or immediate presence, and against [their] will, accomplished by means of force or fear." For attempted robbery, the prosecutor must prove two elements: the specific intent to commit robbery, and a direct but ineffective act toward committing the crime beyond planning or preparation. (*People v. Watkins* (2012) 55 Cal.4th 999, 1021; *People v. Vizcarra* (1980) 110 Cal.App.3d 858, 861.)

Sandoval's argument concerns the second element. An act is sufficient for an attempted offense if it is directed toward

carrying out the would-be perpetrator's plan or, in other words, represents " ' "some appreciable fragment of the crime." ' " (*People v. Watkins, supra,* 55 Cal.4th at p. 1021.)  When intent to rob is clearly shown, any slight act in furtherance of it suffices to complete the crime.  (*People v. Foster* (2007) 155 Cal.App.4th 331, 336; *People v. Bonner* (2000) 80 Cal.App.4th 759, 764.)  We review the evidence in the light most favorable to the judgment below, presuming in support of the judgment the existence of every fact the jury could reasonably have deduced from it, and reverse only if there is no substantial evidence to support the judgment under any possible hypothesis.  (*People v. Sanford* (2017) 11 Cal.App.5th 84, 91.)

Here there was undisputed evidence that Sandoval ran toward Kayla from behind, turned to confront her with clenched fists, and aggressively demanded she give him her money.  When she said she had none he insisted, " 'Yes, you do, bitch.' "  This was sufficient to establish a direct step toward committing robbery through fear. (See *People v. Davison* (1995) 32 Cal.App.4th 206, 216 [enough that defendant and companion approached victim at night at ATM, stared at her, and told her to stand back]; *People v. Ramos* (1980) 106 Cal.App.3d 591, 601-602 [fear need not be extreme], disapproved on another point in *People v. Scott* (1994) 9 Cal.4th 331, 353, fn. 16.)

Sandoval disagrees.  He contends we must put aside the customary substantial evidence standard of review and instead review the evidence de novo because, in his view, he was merely exercising his First Amendment rights when he "ask[ed] for money" on a public street.  (See *In re George T.* (2004) 33 Cal.4th 620, 632 [independent review standard applies when defendant raises plausible First Amendment defense to criminal threat offense].)  But Sandoval apparently did not raise a First Amendment defense at trial, and appropriately so: speech uttered by a robber while ordering the victim to hand over money is not

constitutionally protected. (*United States v. Quinn* (1975) 514 F.2d 1250, 1268; see also *Flatley v. Mauro* (2006) 39 Cal.4th 299, 328 [extortion]; *Ulmer v. Municipal Court* (1976) 55 Cal.App.3d 263, 266 [panhandling]; *People v. Fisher* (1993) 12 Cal.App.4th 1556, 1559-1560 [threats].) In any event it does not matter, as the evidence in this case was sufficient under either standard of review.

### D.

Finally, Sandoval argues the court erred prejudicially by failing to sua sponte instruct the jury on attempted theft, assault with intent to commit robbery, and simple assault. Applying independent review and considering the evidence in the light most favorable to Sandoval (*People v. Woods* (2015) 241 Cal.App.4th 461, 475), we disagree.

A trial court has the duty to sua sponte instruct the jury on any uncharged lesser offense that is necessarily included in a charged offense if there is substantial evidence from which the jury could reasonably conclude the defendant committed the lesser, but not the greater, offense. (*People v. Lopez* (2020) 9 Cal.5th 254, 269.) Attempted theft is a lesser included offense of attempted robbery, since robbery includes all of the elements of theft (including the taking of property without the owner's consent) plus the additional element of force or fear. (*People v. Burns* (2009) 172 Cal.App.4th 1251, 1256.) Here, however, there was no evidence from which the jury could have convicted Sandoval of attempted theft but acquitted him of robbery or its attempt. The force or fear requirement for the robbery charge was satisfied by Sandoval's belligerent demand that Kayla give him her money. If he did not use force or fear, then he did nothing more than ask Kayla to give him money—albeit rudely— which is neither attempted robbery nor attempted theft.

12

Sandoval's claim that the court was required to instruct on simple assault or assault with the intent to commit robbery fails for a different reason: robbery does not include assault as a lesser offense. (*People v. Wolcott* (1983) 34 Cal.3d 92, 100.) Sandoval mistakenly relies on cases expressly or implicitly overruled by *Wolcott*. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455-456.)

## DISPOSITION

The judgment is affirmed.


BURNS, J.


WE CONCUR:


SIMONS, ACTING P.J.
CHOU, J.


*People v. Sandoval* (A165364)

13